# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 49743-3-II |
| Respondent, | |
| v. | |
| SEAN ALLEN FORSMAN, | UNPUBLISHED OPINION |
| Appellant. | |

MELNICK, J. — Sean Allen Forsman appeals his sentence for three convictions of unlawful delivery of a controlled substance, two of which had sentencing enhancements.

We conclude that the trial court did not violate Forsman's right to self-representation because he represented himself at his resentencing hearing. Consequently, he did not receive ineffective assistance of counsel. However, the superior court erred by confining the scope of resentencing to the school bus route stop enhancements and refusing to consider Forsman's criminal history arguments. Accordingly, we remand for a full resentencing hearing.

## FACTS

### I. CONVICTION AND ORIGINAL SENTENCE

A jury found Forsman guilty of three counts of unlawful delivery of a controlled substance: cocaine.[1] It also determined that school bus route stop enhancements applied to two of the three counts.[2] The trial court calculated Forsman's offender score as six and sentenced him to 90 months

---

[1] RCW 69.50.401.

[2] RCW 69.50.435, 9.94A.533(6).

on each of the three counts to run concurrently. It sentenced him to an additional 24 months for each school bus route stop enhancement, to run consecutively to the 90 months and consecutively to one another, for a total sentence of 138 months. On appeal, we affirmed Forsman's convictions but did not address any sentencing issues.[3]

II.    PERSONAL RESTRAINT PETITION (PRP)

In May 2014, Forsman, acting as a self-represented litigant (SRL), filed a motion in the superior court to modify or correct his sentence based on a miscalculation of his offender score and the erroneous imposition of the consecutive school bus route stop enhancements. The court transferred the motion to this court for consideration as a PRP pursuant to CrR 7.8(c)(2). We dismissed the petition.

The Supreme Court granted Forsman's petition for review "only on the issue of the trial courts imposition of consecutive school bus stop enhancements." Clerk's Papers (CP) at 146. The court remanded the case to the trial court for resentencing consistent with *State v. Conover*. 183 Wn.2d 706, 355 P.3d 1093 (2015). *Conover* held that RCW 9.94A.533(6) required school bus stop enhancements to run consecutively to base sentences, but not consecutively to one another. 183 Wn.2d at 719.

III.    RESENTENCING HEARING

In September 2016, Forsman, as an SRL, filed a sentencing memorandum with the Superior Court, arguing that his offender score should be recalculated.

Forsman personally argued to the court that, pursuant to RCW 9.94A.530(2), he should be entitled to present new evidence about his offender score. The court concluded that its "lawful

---

[3] *See State v. Forsman*, No. 44801-7-II (Wash. Ct. App. Feb. 3, 2015) (unpublished), http://www.courts.wa.gov/opinions/.

authority" was constrained to the "narrow issue" of the school bus route stop enhancements. Report of Proceedings (RP) (Nov. 4, 2016) at 8. It stated: "The matter is remanded for resentencing consistent with *Conover*. *Conover* addresses the school zone enhancements. I'm not going to reconsider anything other than that." RP (Nov. 4, 2016) at 8-9. The court then ruled that, consistent with *Conover*, the two school bus route stop enhancements should run concurrently with one another. It reduced Forsman's total sentence by 24 months to 114 months.

After the court resentenced Forsman, he raised the issue of his representation. He stated that he had attempted to retain two different attorneys, but that neither of them appeared for the hearing. The court responded that no attorney had filed a notice of appearance, which is why it had directly interacted with Forsman for the entirety of the hearing. Forsman responded that he "was wanting to proceed like a pro se as this has been a pro se course of action" and that, because the court was denying his request to present evidence about his criminal history, "it's irrelevant at this point for me to invoke that right." RP (Nov. 4, 2016) at 11.

The court then observed that a lawyer from the Department of Assigned Counsel (DAC) was present at the hearing "to essentially stand by or to provide perhaps some assistance to Mr. Forsman." RP (Nov. 4, 2016) at 12. The prosecutor expressed confusion and stated "it was never clear to me that he was back for resentencing in a pro se position, and I thought [DAC counsel] was here as his attorney of record." RP (Nov. 4, 2016) at 12. The DAC counsel clarified that she was representing him for the resentencing hearing. She said: "He and I did discuss the facts. I've told him my understanding of his argument and of the court's possible ruling, but he made the argument that he wanted to make and that he had filed with the Court." RP (Nov. 4, 2016) at 13. She confirmed that, while she had been present in a representative capacity, Forsman had wanted

3

to speak for himself. Forsman also confirmed that he had wanted to speak for himself and stated

that he had been "proceeding pro se." RP (Nov. 4, 2016) at 14.

The court asked Forsman whether it was his decision to speak for himself, and the

following exchange occurred:

> THE COURT: Just so our record is clear, even though [DAC counsel] has been here prepared to speak for you as your legal representative, it's your decision to speak for yourself today?
> [Forsman]: Well, I was trying to present that to you before you cut me off and tried to get to the answers that you were trying to reach to, but it was a pro se course of action and you could have put her on standby. You could have granted her hybrid representation status, whatever, but it was a pro se course of action and I was acting pro se.
> THE COURT: Okay. So you have no objection or no argument against [DAC counsel] sitting here silently today?
> [Forsman]: No, I don't.

RP (Nov. 4, 2016) at 14.

The prosecutor then requested, for "purposes of a clean record," that the DAC counsel

advance any further arguments she may have as Forsman's attorney. RP (Nov. 4, 2016) at 14-15.

The court stated that it was "satisfied that Mr. Forsman voluntarily, freely chose to speak for

himself this afternoon," but acknowledged that the DAC counsel was present representing him.

RP (Nov. 4, 2016) at 15. It then gave counsel an opportunity to "make any further arguments or

statements" on Forsman's behalf. RP (Nov. 4, 2016) at 15. She stated:

> I can tell the Court that, in reading the documentation that was filed from the Supreme Court and also from Mr. Forsman, I do not disagree with what the Court has done here today, and what Mr. Forsman has argued is his argument, which is why I let him make the argument. Hopefully that's clear.

RP (Nov. 4, 2016) at 15. Immediately after this statement, the following exchange occurred

between Forsman and the court:

> [Forsman]: . . . So far as being granted pro se status, this has been a pro se course of action from the beginning. From the 7.8 that was filed with this court, I have not had representation interact with me, for me, on my behalf, on this matter.

4

And [DAC counsel], I have met her approximately an hour before coming into this courtroom today. I did not request for her assistance. At the same time, I wanted to assert my pro se status, keep my pro se status. It was never not a right that I didn't have anyways. I've been proceeding pro se and I was going to continue to proceed pro se, but I don't object to her putting forth argument on my behalf in my favor for an outcome that would be advantageous for me, but at the same time, I still want to keep my pro se status.

THE COURT: Well, I permitted you to argue for yourself. I've given [DAC counsel] an opportunity to make further arguments and comments. She made a couple of comments. I don't know how I could try to clarify the record any more.

RP (Nov. 4, 2016) at 16. The court then signed a judgment and sentence that reflected its actions.

Forsman appeals.

ANALYSIS

I.     RIGHT TO SELF-REPRESENTATION

Forsman contends that the court denied him his right to represent himself at the resentencing hearing. He claims that, if he was required to affirmatively request to represent himself, he did so unequivocally.[4]

"We review a trial court's denial of the right to represent oneself for an abuse of discretion." *State v. Englund*, 186 Wn. App. 444, 454, 345 P.3d 859 (2015). "Article 1, section 22 of the Washington Constitution explicitly guarantees criminal defendants the right to self-representation." *Englund*, 186 Wn. App. at 455. "Courts regard this right as 'so fundamental that it is afforded despite its potentially detrimental impact on both the defendant and the administration of justice.'" *Englund*, 186 Wn. App. at 455 (quoting *State v. Madsen*, 168 Wn.2d 496, 503, 229 P.3d 714 (2010)). "Improper denial of the right to represent oneself requires reversal regardless of whether prejudice results." *Englund*, 186 Wn. App. at 455.

---

[4] Forsman had a lawyer representing him at his original trial and sentencing. He first appeared as an SRL in his PRP.

However, "[t]he right to self-representation is not self-executing." *Englund*, 186 Wn. App. at 456. A trial court "must honor a properly made request for self-representation," but must also "indulge in 'every reasonable presumption against a defendant's waiver of his or her right to counsel.'" *Englund*, 186 Wn. App. at 456 (quoting *Madsen*, 168 Wn.2d at 504) (internal quotations omitted). The court must determine "whether the request is unequivocal and timely" and, if it is, whether it is "voluntary, knowing, and intelligent, usually by colloquy." *Madsen*, 168 Wn.2d at 504.

A trial court may deny the right if the request "is equivocal, untimely, involuntary, or made without a general understanding of the consequences." *Madsen*, 168 Wn.2d at 504-05. A defendant's request to proceed as an SRL must be unequivocal to protect "defendants from making capricious waivers of counsel and to protect trial courts from manipulative vacillations by defendants regarding representation." *State v. Stenson*, 132 Wn.2d 668, 740, 940 P.2d 1239 (1997). The request to represent oneself must be unequivocal in the context of the record as a whole. *State v. Luvene*, 127 Wn.2d 690, 698-99, 903 P.2d 960 (1995).

In this case, Forsman did not raise any issue regarding representation until the court had completed resentencing him. Until then, Forsman had been speaking for himself and making his own arguments. When the issue of his representation arose, Forsman stated that he did not "object to [DAC counsel] putting forth argument on [his] behalf in [his] favor for an outcome that would be advantageous for [him], but at the same time, [he] still want[ed] to keep [his] pro se status." RP (Nov. 4, 2016) at 16.

Although the court and DAC counsel both asserted that DAC counsel was present to represent Forsman, DAC counsel did not interject any comments until after the court had already given Forsman the opportunity to personally argue his case. Assigned counsel's role in the

6

proceedings is more aptly characterized as a standby counsel. Counsel assisted Forsman in making his own arguments but did not put forth any substantive case on Forsman's behalf. *See State v. Silva*, 107 Wn. App. 605, 626, 27 P.3d 663 (2001) (clarifying the role of standby counsel).

Forsman filed his own pleadings, made his own arguments, and repeatedly asserted that he represented himself. Despite the lack of a formal colloquy to definitively resolve his representation status, Forsman represented himself at his resentencing hearing. Therefore, the court did not violate his right to self-representation.

II.     INEFFECTIVE ASSISTANCE OF COUNSEL

Forsman contends that the lawyer from DAC provided ineffective assistance of counsel because she "did not adversarially test the prosecution's sentence demand" or advocate on his behalf. Br. of Appellant at 9. He contends that he need not show prejudice because he suffered a complete denial of counsel.

"[A] criminal defendant who exercises his constitutional right to self-representation cannot later claim ineffective assistance of counsel because the defendant assumed complete responsibility for his own representation." *State v. Pugh*, 153 Wn. App. 569, 579, 222 P.3d 821 (2009). However, "a criminal defendant may claim ineffective assistance of standby counsel if standby counsel violated a limited duty or obligation owed to the pro se defendant." *Pugh*, 153 Wn. App. at 579.

The Sixth Amendment to the United States Constitution and article I, section 22 of the Washington Constitution guarantee the right to effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 685-86, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984); *State v. Grier*, 171 Wn.2d 17, 32, 246 P.3d 1260 (2011).

7

We review claims of ineffective assistance of counsel de novo. *State v. Sutherby*, 165 Wn.2d 870, 883, 204 P.3d 916 (2009). To prevail on a claim of ineffective assistance of counsel, the defendant must show both (1) that defense counsel's representation was deficient, and (2) that the deficient representation prejudiced the defendant. *Grier*, 171 Wn.2d at 32-33. Representation is deficient if, after considering all the circumstances, the performance falls below an objective standard of reasonableness. *Grier*, 171 Wn.2d at 33. A defendant faces a strong presumption that counsel's representation was effective. *Grier*, 171 Wn.2d at 33.

In *United States v. Cronic*, the Court held that prejudice arising from ineffective assistance of counsel may be presumed when there is "the complete denial of counsel." 466 U.S. 648, 659, 104 S. Ct. 2039, 80 L. Ed. 2d 657 (1984). "Complete denial of counsel" includes the following scenarios:

> "(1) where a defendant 'is denied counsel at a critical stage of his trial'; (2) where 'counsel entirely fails to subject the prosecution's case to meaningful adversarial testing'; (3) where the circumstances are such that 'the likelihood that any lawyer, even a fully competent one, could provide effective assistance is so small that a presumption of prejudice is appropriate without inquiry into the actual conduct of the trial'; and (4) where 'counsel labors under an actual conflict of interest.'"

*In re Pers. Restraint of Davis*, 152 Wn.2d 647, 674, 101 P.3d 1 (2004) (quoting *Visciotti v. Woodford*, 288 F.3d 1097, 1106 (9th Cir. 2002) (quoting *Cronic*, 466 U.S. at 659-61, 662 n.31)).

Forsman argues that his lawyer failed to subject the prosecution's case to meaningful adversarial testing. This type of failure arises where:

> [T]he defense attorney abandoned his duty to his client and joined the State's efforts to prosecute, or counsel's own interests or sympathies conflict[ed] with his client's interests; or where counsel called his client racially offensive names and threatened to provide substandard performance if his client chose to go to trial.

*State v. Webbe*, 122 Wn. App. 683, 695, 94 P.3d 994 (2004) (footnotes omitted).

8

As standby counsel, Forsman's lawyer's role was not to represent him. *Pugh*, 153 Wn. App. at 580. Rather, her position was to provide him with technical information and to be available in case the court terminated his self-representation. *Pugh*, 153 Wn. App. at 580. She was not "obligated to perform research and errands on behalf" of Forsman, *Pugh*, 153 Wn. App. at 580; and Forsman made clear throughout the resentencing hearing that he wanted to make his own arguments and represent himself.

Standby counsel had no duty to personally expound on Forsman's sentencing arguments. Her statements to the court did not rise to the level of "join[ing] the State's efforts to prosecute" and did not indicate any conflict of interest with Forsman. *Webbe*, 122 Wn. App. at 695. To the extent Forsman was denied the assistance of counsel, it was at his own request to proceed as an SRL.

III.    SCOPE OF RESENTENCING

Forsman contends that when a trial court conducts a resentencing hearing on remand, it must start from scratch and allow both parties to present evidence on all issues relevant to criminal history. He primarily relies on the 2008 amendments to RCW 9.94A.530(2).

In 2008, the legislature amended the sentencing reform act to allow parties to present new evidence at resentencing on remand. *State v. Jones*, 182 Wn.2d 1, 5, 338 P.3d 278 (2014); LAWS OF 2008, ch. 231, § 4. The amended section provides: "On remand for resentencing following appeal or collateral attack, the parties shall have the opportunity to present and the court to consider all relevant evidence regarding criminal history, including criminal history not previously presented." RCW 9.94A.530(2); LAWS OF 2008 ch. 231, § 4.

*Jones* held that the "no second chance" rule from *State v. Ford*, 137 Wn.2d 472, 973 P.2d 452 (1999), had been based on judicial economy, rather than constitutional due process, and that

the legislature therefore had the authority to change it. 182 Wn.2d at 10-11. In *Jones*, the trial court, at resentencing on remand, followed the old "no second chance" rule. 182 Wn.2d at 3. It prohibited the State from supplementing the record with additional evidence of the defendant's criminal history. *Jones*, 182 Wn.2d at 4-5. In allowing the State to present additional evidence of the defendant's criminal history on remand, the court relied on RCW 9.94A.530(2). *Jones*, 182 Wn.2d at 11.

However, we recognize that "[t]he trial court's discretion to resentence on remand is limited by the scope of the appellate court's mandate." *State v. Kilgore*, 167 Wn.2d 28, 42, 216 P.3d 393 (2009). *State v. Toney*, ruled that:

> [T]he defendant may raise sentencing issues on a second appeal if, on the first appeal, the appellate court vacates the original sentence or remands for an entirely new sentencing proceeding, but not when the appellate court remands for the trial court to enter only a ministerial correction of the original sentence.

149 Wn. App. 787, 792, 205 P.3d 944 (2009).

In *Toney*, the appellate court ruled that RCW 9.94A.310 did not mandate firearm sentencing enhancements to run consecutively and "remanded for resentencing under 'proceedings consistent with this opinion.'" *Toney*, 149 Wn. App. at 790 (quoting *State v. Toney*, noted at 95 Wn. App. 1031, 1999 WL 294615, at *6). The superior court then conducted a full resentencing hearing. *Toney*, 149 Wn. App. at 790. The court clarified that the trial court had this discretion because its remand had "not limit[ed] the trial court to making a ministerial correction," rather it had "unequivocally 'remand[ed] for resentencing.'" *Toney*, 149 Wn. App. at 792 (quoting *Toney*, 1999 WL 294615, at *1). In concluding that the full resentencing was within the trial court's discretion, the *Toney* court did not address or cite RCW 9.94A.530(2).

In *State v. Rowland*, we concluded that the resentencing court had erred by refusing to allow the defendant to challenge his offender score. 160 Wn. App. 316, 331, 249 P.3d 635 (2011).

10

In that case, the appellate remand occurred to correct the defendant's miscalculated offender score, but on remand, the defendant raised a different challenge to his offender score that had not been considered by the appellate court. *Rowland*, 160 Wn. App. at 319-20, 331. *Rowland* concluded that, because the resentencing court had "necessarily exercised its independent discretion" to address broader sentencing issues, the defendant was "entitled to raise new challenges to his offender score on remand." 160 Wn. App. at 331.

*State v. Ramos* determined that a remand to "state the specific term of community placement" would be "purely ministerial, since the length of community placement is dictated by statute." 171 Wn.2d 46, 49, 246 P.3d 811 (2011). However, the court also mandated that the superior court "specify 'the special terms of the placement,'" which required the exercise of its discretion and prevented the remand from being purely ministerial. *Ramos*, 171 Wn.2d at 49 (quoting *State v. Ramos*, noted at 156 Wn. App. 1041, 2010 WL 2487831, at *2).

In the present case, Forsman raised two issues in his original PRP, the proper treatment of the school bus route stop enhancements, and the calculation of his offender score. In its order granting review, the Supreme Court granted his motion "only on the issue of the trial courts imposition of consecutive school bus stop enhancements." CP at 147. It then remanded the case to the trial court "for resentencing consistent with *State v. Conover*," CP at 147, which held that the Sentencing Reform Act of 1981 does not require multiple school bus route stop enhancements to run consecutively to one another. *Conover*, 183 Wn.2d 706.

Like *Toney*, 149 Wn. App. at 790, the court remanded "for resentencing" on the issue of whether specific sentence enhancements should run concurrently or consecutively to one another. CP at 147. *Toney* concluded that a remand for this type of correction gave the superior court

11

authority to completely resentence the defendant without limiting it to the specific mandate of the appellate court. 149 Wn. App. at 793.

When correcting specific errors in a sentence, appellate courts remand for resentencing "unless the record clearly indicates the sentencing court would have imposed the same sentence anyway." *State v. Parker*, 132 Wn.2d 182, 189, 937 P.2d 575 (1997). That situation exists in this case where the trial court resentenced Forsman to concurrent terms on the enhancements. The record does not clearly show that this change would not affect the remainder of Forsman's sentence.

Accordingly, the Supreme Court's remand for "resentencing consistent with" *Conover* did not limit the superior court's mandate solely to correction of the school bus route stop enhancements. Because the mandate was not purely ministerial, the superior court had the authority to conduct a full resentencing hearing. Therefore, RCW 9.94A.530(2) required it to allow Forsman to present evidence of his criminal history.

IV.     STATEMENT OF ADDITIONAL GROUNDS

A.     EVIDENTIARY HEARING

Forsman argues that the superior court was required to conduct an evidentiary hearing pursuant to RCW 9.94A.530(2) to recalculate Forsman's criminal history. This argument is addressed above. Where a SAG contains alleged errors that "have been thoroughly addressed by counsel," they are "not proper matters for [the] statement of additional grounds under RAP 10.10(a)." *State v. Thompson*, 169 Wn. App. 436, 493, 290 P.3d 996 (2012).

B.     RULES OF PROFESSIONAL CONDUCT

Forsman contends that his lawyer at the resentencing violated the rules of professional conduct by failing to provide competent representation, failing to abide by the client's decisions

49743-3-II

concerning the objectives of litigation, and several other reasons. As grounds for her alleged misconduct, Forsman cites her statements to the superior court addressed above under ineffective assistance of counsel.

Insofar as Forsman's allegations of professional misconduct constitute an ineffective assistance of counsel argument, they are addressed in his brief and are not proper matters for the statement of additional grounds. *Thompson*, 169 Wn. App. at 493. Aside from an ineffective assistance of counsel argument, Forsman has not requested any particular relief or argued how the alleged misconduct is relevant to his case. If he wishes to proceed with a professional complaint against his standby counsel, he has the option to file a grievance with the Washington State Bar. Rule for Enforcement of Lawyer Conduct 5.1(a).

We reverse and remand for a full resentencing in which Forsman may submit new evidence relating to his criminal history pursuant to RCW 9.94A.530(2).

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Melnick, J.

We concur:

Worswick, J.

Bjorgen, C.J.

13